SUMRALL, TRUSTEE OF DOBYNS *et al.*, Appellants, *v.* EDWARD CHAFFIN AND ALBERT TODD, Respondents.

1. *Deed of trust — Advertisement under, what sufficiently accurate.*—An advertisement, under a deed of trust on a certain lot of ground, correctly recited the number of the lot, and further stated that the land was to be sold with all the improvements on it, but incorrectly stated the number of houses embraced in it. No attempt was made to show that any one was misled by the advertisement. *Held*, that the advertisement was sufficiently accurate.

2. *Deed of trust — Sale by trustee — Property should be sold in subdivisions, when.* — It would be the duty of a trustee, in selling a number of tenement houses standing together, to dispose of them singly or to sell the land ·in parcels less than the whole, if any one desired to purchase in that way, even though the houses were so built together with their walls that the property would not be readily susceptible of a division.

Sumrall, Trustee of Dobyns et al., v. Chaffin et al.

*Appeal from St. Louis Circuit Court.*

*Geo. P. Strong*, for appellants.

*J. N. Litton*, for respondents.

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding in equity to set aside a sale made by a trustee, and for an account of the rents and profits of the property sold.

The averments in the petition are, in substance, that on the 30th of May, 1859, Edward Dobyns and wife made a deed of trust to Albert Todd to secure the payment of $5,000 loaned to Dobyns by defendant Chaffin, together with six interest notes for $250 each; that the principal note was due in three years and the interest notes were payable semi-annually; that the property was subsequently conveyed to Sumrall, in trust, subject to the debt of Chaffin, which was a prior encumbrance; that Dobyns was the plaintiff's agent, attending to the payment of the interest notes; and that, being on the eve of departing from the city of St. Louis, where the property was situated, and the principal note being past due and some of the interest notes remaining unpaid, he went to the defendant Todd and made a contract with him, as trustee in the deed and agent of Chaffin, by which Todd agreed that no steps should be taken during Dobyn's absence, either to enforce said deed of trust or to collect the notes, except out of certain rents; that the conditions of the agreement with Todd were that Dobyns should turn over certain rents to him, yielding $132 monthly, and amounting to $1,584 per annum; that Dobyns complied with this agreement, and that the rents were sufficient to pay the taxes, interest, insurance, and part of the principal of the debt, but that Todd would not consent to place the balance to the credit of the principal, and it was therefore agreed that he should hold it in his hands for the plaintiff. It is alleged that, relying on this understanding and agreement, Dobyns left the city, and that Todd and Chaffin, by their conduct in receiving the rents and agreeing to apply and appropriate

them, lulled Dobyns into security; and that, soon after he had left, Todd, in fraud of the plaintiff's rights, and in violation of the contract entered into, advertised and sold the property under the deed of trust, and purchased the same for Chaffin.

The defendants answered jointly, and substantially denying the allegations set out in the petition. They virtually say that Dobyns did not put any such amount of rents in the hands of Todd, and knew that he did not; that he pretended and professed to do so, but in this pretense and profession he was guilty of bad faith.

The cause was heard upon the pleadings, exhibits and proofs, and the court below dismissed the petition and awarded judgment for the defendants, and the plaintiffs have brought up the case for review by appeal.

A careful reading of all the proofs adduced and preserved in the record shows beyond all doubt that the evidence does not sustain the charges contained in the plaintiff's bill. When called upon to testify, Dobyns, who was the principal and only material witness for the plaintiff, wholly fails to show that there was any agreement made by Todd not to sell the property under the deed of trust and in his absence. He only says — and this is his strongest language — "I was satisfied, from what transpired, Mr. Todd would not sacrifice my property." He relied upon Mr. Todd's indulgence, but not upon any binding, positive contract. On the other hand, Mr. Todd is clear and explicit that no such arrangement or agreement was entered into. He agreed to take the rents, and had they been as represented they would have been satisfactory, and the sale would not have taken place. It was a matter of favor to Dobyns, but imposed no legal disability as to a foreclosure and sale of the property. The arrangement was made and concluded solely on the representation of Dobyns as to the condition of the property and the amount and certainty of the rents. But after Dobyns' departure it was found that his representations were wholly untrue. The property was turned over to Porter & Wolff, real estate and collecting agents, and the testimony shows that there were back taxes on the property, that the tenants had been garnished, and that up to July 22d, the

date of the sale, nearly two months having elapsed, they had only been able to collect $57; that up to October 1st they only received $297, and part of this was paid out on judgments against Dobyns. Under these circumstances, when the principal debt, with the accumulation of one year's interest, was due, and some of the interest notes remained unpaid, it is not strange that Todd deemed the rents an inadequate security. He was acting for a principal who was a non-resident, and who relied upon him exclusively to protect his interest. When, therefore, instead of receiving the $132 a month which Dobyns assured him he would get, he got only the small amounts above stated, he considered that he was deceived, and was under no further obligation to desist from selling and securing his debt.

Dobyns may have been too sanguine in his estimates, and may have inadvertently neglected to state the real condition in which the property was placed; but the fact is patent that his statement amounted to a misrepresentation. The property was forfeited for the non-payment of taxes; back taxes were due, amounting to over $500, and the rents did not yield the sum supposed. When Dobyns represented that the rent of the houses would realize $132 a month, or $1,584 a year—a sum amply sufficient to keep down insurance, taxes and interest—and would yield a balance over, Todd said if that was the case it would be satisfactory. But it turned out not to be true, and hence there was neither a legal nor moral obligation binding on Todd.

A point has been made in regard to a misdescription in the advertisement, which it is argued operated injuriously toward the debtor. But in this assumption we cannot concur. The ground sold was a lot with certain tenement houses on it. The number of houses was not correctly stated in the advertisement; but the description was given correctly as to the lot, just as it was contained in the deed of trust, and it was further stated that the lot was to be sold with all improvements on it. This I think was entirely sufficient. There was no necessity for any other description than that inserted in the deed; and it is safe to suppose that bidders, when they desire to purchase property, and the advertisement informs them what property it is, will always inform them-

selves as to its condition. Besides, it is not attempted to be shown that any injury resulted from the advertisement. Had any one been misled by it, a wholly different question would be presented.

It is also contended that the trustee unwisely and unsoundly exercised his discretion in selling the trust property in gross, when it should have been divided, but there is no evidence of this; in fact, the proofs are to the contrary. The weight of evidence goes to show that these tenement houses were so built together with their walls that the property was not readily susceptible of division. Still, we think that if there was any one who desired to purchase one of these houses, or a strip of land less than the whole, it would have been the duty of the trustee to have sold in that way; for the trustee is bound to realize the most he can for the debtor. But the evidence here vindicates the action of the trustee most conclusively. It shows that he attempted to sell the property by parcels and subdivisions; that he distinctly stated at the commencement of the sale that if any one wished to purchase a piece or lot it would be so set up, and he could have the opportunity. And after an ineffectual attempt to sell in that way, in consequence of there being no bidders, the property was then sold altogether. The sale seems to have been conducted with perfect fairness, and we fail to see any reason for disturbing it.

Some other matters were discussed in the argument of this cause, but we deem it unnecessary to notice them. They are not materially important, and can have no influence upon the final decision. In our view the judgment of the lower court must be affirmed. The other judges concur.